IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| SEDRICK HAILES, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CIVIL ACTION NO.2:05cv54-SRW |
| ) | (WO) |
| COMPUDYNE CORPORATION, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Larry Hampton was employed by defendant Norment Security Group, Inc. ("Norment") from June 2002 until October 2003 as an aluminum assembler. Hampton brings claims pursuant to Title VII and 42 U.S.C. § 1981 against Norment and Compudyne, Norment's parent corporation, alleging that they discriminated against him with regard to pay, attendance points, overtime work and training, and terminated him in retaliation for filing a claim of race discrimination. (Complaint, ¶¶ 68-78).[1] This action is presently before the court on defendants' motion for summary judgment (Doc. # 61). Although given an opportunity to do so (Doc. ## 26, 65), plaintiff has not responded to the motion. Upon consideration of the motion, the court concludes that it is due to be granted.

---

[1] Plaintiff also alleged retaliation on the basis of a workers' compensation claim (see Complaint, ¶ 78); however, he testified in his deposition that he has no such claim. (Hampton depo., pp. 115-16). Thus, plaintiff has abandoned this claim. Plaintiff also alleges that his immediate supervisor, Ralph Dorsey, once referred to plaintiff and plaintiff Sedrick Hailes as "Buckwheat." (Complaint, ¶ 75). Plaintiff does not, however, allege or argue that defendant subjected him to a hostile environment.

## THE SUMMARY JUDGMENT STANDARD

A party seeking summary judgment bears the initial burden of demonstrating to the court the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions that it believes show an absence of any genuine issue of material fact.  Hairston v. Gainesville Publishing Co., 9 F.3d 913 (11th Cir. 1993). For issues on which the non-movant bears the burden of proof at trial, "the moving party is not required to support its motion with affidavits or other similar material negating the opponent's claim in order to discharge this initial responsibility.  Instead, the moving party simply may show [ ] – that is, point[ ] out to the district court – that there is an absence of evidence to support the non-moving party's case."  Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115-16 (11th Cir. 1993)(quoting U.S. v. Four Parcels of Real Property, 941 F.2d 1428, 1437-38 (11th Cir. 1991)(*en banc*)).

In Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the Court held that if a party opposing summary judgment "fails to make a showing sufficient to establish the existence of an element essential to their party's case, and on which their party will bear the burden of proof at trial," summary judgment shall be granted.

> [W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue . . . Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial. . . We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment. . . . Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56 except the mere pleadings themselves. . . ."

2

Id. at 324.

For summary judgment purposes, an issue of fact is "material" if it is a legal element of the claim, as identified by the substantive law governing the case, such that its presence or absence might affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. Matsushita Electrical Industrial Company v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The court must view the evidence, and all factual inferences properly drawn from the evidence, in the light most favorable to the nonmoving party. Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir. 1992); Rollins v. TechSouth, Inc., 833 F.2d 1525, 1528 (11th Cir. 1987). It is improper for this court to weigh conflicting evidence or make credibility determinations; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255. Where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the court should refuse to grant summary judgment." Barfield v. Brierton, 883 F.2d 923, 933-34 (11th Cir. 1989) (citation omitted).

## DISCUSSION

### Analytical Framework for Disparate Treatment Claims

The McDonnell Douglas/Burdine[2] framework was established by the Supreme Court

---

[2] McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981).

for evaluating a Title VII plaintiff's claims of discrimination against an employer where, as here, there is no direct evidence of discrimination.  See  Combs v. Plantation Patterns, 106 F.3d 1519, 1527-28 (11th Cir. 1997).  This analytical framework is also applicable to race discrimination claims asserted pursuant to 42 U.S.C. § 1981.  Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir.1998).  The plaintiff must first make out a *prima facie* case of discrimination.  Burdine, 450 U.S. at 252-53; Walker v. Mortham, 158 F.3d 1177, 1183 (11th Cir.1998); Combs, 106 F.3d at 1527-28.  "Establishment of the *prima facie* case in effect creates a presumption that the employer unlawfully discriminated against the employee.  If the trier of fact believes the plaintiff's evidence, and if the employer is silent in the face of the presumption, the court must enter judgment for the plaintiff because no issue of fact remains in the case."  Id. (quoting Burdine, 450 U.S. at 254); Walker, *supra*.

If the plaintiff establishes a *prima facie* case, the employer has the burden of producing "legitimate, non-discriminatory reasons for the challenged employment action." Combs, 106 F.3d at 1528 (citing McDonnell Douglas, 411 U.S. at 802).  "To satisfy this intermediate burden, the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." Combs, 106 F.3d at 1528 (quoting Burdine, 450 U.S. at 257).  If the employer articulates a legitimate, nondiscriminatory reason for its decision, the mandatory inference of discrimination arising from the *prima facie* case is destroyed. Walker, 158 F.3d at 1184.  The plaintiff must then produce evidence "including the previously produced evidence establishing the *prima facie* case, sufficient to permit a

4

reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." Combs, 106 F.3d at 1528.

**Pay Claim**

Plaintiff alleges that "Mike Sims, a white employee who works in the Aluminum Department with Plaintiff Hampton, and who performed the same or similar job functions as Plaintiff Hampton, and was hired after Plaintiff Hampton makes more money than Plaintiff Hampton.  Plaintiff Hampton alleges that he has more experience than Mike Sims." (Complaint, ¶ 69).  Defendants argue that plaintiff cannot establish a *prima facie* case as to his pay claim and, further, that plaintiff cannot demonstrate pretext.  To establish his *prima facie* case of pay discrimination, plaintiff must demonstrate that similarly situated comparators outside his protected class received higher compensation. Cooper v. Southern Co., 390 F.3d 695 (11th Cir. 2004).  Sims, the only comparator identified by plaintiff with regard to his pay claim,[3] was hired as a welder.  Welding is a skilled job; job qualifications include a two-year vocational school degree in welding or three years' welding and fitting experience.  Prior to his employment at Norment, Sims had a total of eleven years of welding experience.  (Bright dec., ¶¶ 21-23).  When welders are not busy, they assist other departments, including the aluminum assembly department. During plaintiff's employment, Norment often required welders (including Sims) to work in other departments.  When they

---

[3] See Exhibit 9 (plaintiff's answer to interrogatory # 6) and Complaint, ¶ 69.  Plaintiff alleges that there are other higher-paid white employees, but cannot identify them and does not recall how much money they made.  (Complaint, ¶ 70; Hampton depo., p. 27).

5

do so, the welders retain their classifications and regular pay rates. (Id., ¶¶ 20, 25). Plaintiff was initially hired to work in the crating department, building wooden crates and pallets for shipping windows. Shortly thereafter, he moved to the aluminum department as an aluminum assembler. (Complaint, ¶ 68; Hampton depo., p. 21). Aluminum assembly is a semi-skilled job; job qualifications include a one-year certificate from a college or technical school or three to six months of related experience. Norment pays welders more than assemblers or craters. (Bright dec., ¶¶ 10, 22; Hampton depo., p. 25). Plaintiff testified that Sims worked at the particular job that plaintiff was doing, and that plaintiff did not see Sims doing any welding. (Hampton depo., p. 26). However, plaintiff also testified that he did not know when Sims was hired or the job that Sims was hired into, and did not know of Sims' work experience prior to his employment at Norment. (Id., pp. 24-25). Plaintiff has not directed the court to competent evidence of record demonstrating the existence of a genuine issue of material fact as to whether Sims is similarly situated to plaintiff. Thus, he has not established a *prima facie* case of pay discrimination.

Additionally, defendants have articulated a legitimate non-discriminatory reason for the decision regarding plaintiff's pay. (Bright dec., ¶¶ 10, 21-23, 43-44). Plaintiff has not demonstrated that the reason articulated by defendants is pretextual. Defendants are entitled to summary judgment on plaintiff's discriminatory pay claim.

## Attendance Points Claim

In January 2003, Norment instituted an attendance policy under which employees accumulated "points" for "unsatisfactory time lost from work." The only absences

considered satisfactory under the policy are those due to "vacation, funeral leave, jury duty, holidays, military leave, approved leave of absence, court summons . . . and time off due to work related injury." Employees incur one point for each day of unsatisfactory absence and one-half point for each partial day. An employee who accumulates 10 points in a rolling 12-month period is subject to termination. (Exhibit 6). Steve Gibbs, plaintiff's supervisor, states that he terminated plaintiff because plaintiff had accumulated ten attendance points under the policy. (Gibbs dec.).

Plaintiff alleges that he received points under Norment's attendance point system for time off of work due to illness, while similarly situated white employees have been allowed to take sick time off without consequence. He further alleges that Sims accumulated attendance points sufficient for termination but remained employed and that other white employees were allowed to take time off from work without being penalized. Plaintiff also contends that Gibbs gave him one half point for missing work due to a work-related injury and that white employees did not receive points for time off for work injuries. (Complaint, ¶¶ 71-72, 76).

Defendant argues that plaintiff cannot establish a *prima facie* case because his alleged comparators are not similarly situated. Plaintiff was terminated for accruing ten attendance points. (Gibbs dec., ¶ 7). Plaintiff has not directed the court to evidence of any employee outside his protected class who remained employed after incurring ten attendance points. He testified that he did not know of any white employee who reached ten points. (Hampton depo., p. 86). Plaintiff testified that he cannot recall the names of white employees who did

7

not receive attendance points for absences related to work injuries.  (Id., pp. 73-74).

Under the attendance policy, employees accrued points for taking sick leave.  (Bright dec., ¶ 38; Hampton depo., p. 87-88).  However, employees with accrued vacation time could use a vacation day for the absence to avoid accruing a point.  (Hampton depo., pp. 91-92; Gibbs dec., ¶ 4).  In his deposition, plaintiff identified white employees Sims, Forbus and Whitley as employees who he claims did not receive attendance points when they missed work due to illness.  (Hampton depo., pp. 75-76, 88-89, 90-91).  However, plaintiff does not state how he came to have knowledge of the attendance points assessed against these individuals, and it is not evident from plaintiff's deposition testimony that he has personal knowledge of whether and when points were assessed against these or any other employees.  For this reason alone, plaintiff has failed to establish that he was treated differently from a similarly situated employee outside his protected class with regard to imposition of attendance points and, thus, has failed to establish a *prima facie* case.  See Macuba v. Deboer, 193 F.3d 1316, 1322-23 (11th Cir. 1999)(Rule 56(e) requirement that affidavits be made on personal knowledge also applies to deposition testimony).

Additionally, plaintiff testified that he did not know whether Forbus or Whitley had accrued vacation time to cover their absences.  (Id., pp. 76, 90-91).  Sims was on a medical leave of absence from April 9, 2003 until August 19, 2003 due to treatment for cancer.  Norment did not assess him attendance points during this time because it did not enforce the no-fault attendance policy to the extent that the FMLA or state law required otherwise.  (Bright dec., ¶¶ 23, 39).  Plaintiff testified that an employee named either John or James

8

Daniels left work early to pick his child up from school. (Hampton depo., p. 90). Plaintiff provides no further information about Daniels' situation, and no evidence that Daniels did not use vacation time. Plaintiff has not demonstrated that he was similarly situated to any comparator and, thus, has not established a *prima facie* case of discriminatory application of the attendance policy.

Additionally, defendant has articulated a legitimate nondiscriminatory reason for its assessment of attendance points against plaintiff – that is, his absences (exclusive of absences on accrued vacation) on January 6-8; February 12, 14, and 26; March 6, 21, 22, 24, and 29; April 30; September 19, and October 10 – and plaintiff has not demonstrated that this reason is pretextual. (Bright dec., ¶ 47; Gibbs dec.).[4]

## Training Claim

Plaintiff alleges that "white employees, who are similarly situated, are allowed to

---

[4] Gibbs (plaintiff's supervisor) and Bright (the Director of Human Resources) both testify by declaration that these absences were exclusive of absences on accrued leave. Plaintiff's testimony that he was "pretty sure [he] had vacation days that [he] could have been given" is not sufficiently specific to demonstrate the existence of a genuine issue of material fact. The same is true of his testimony that the vacation day he took at the end of September was not his "last one," where he immediately preceded it with the statement, "I don't know whether that was my last one," and where he stated in his sworn EEOC charge that Gibbs had told him he would not *advance* plaintiff leave to cover the September 19 absence. (Hampton depo., pp. 80, 86; Exhibit A to Bright dec.); see also Complaint, ¶ 76 (plaintiff alleges that Gibbs told plaintiff he would not get "an advanced vacation day"); Gibbs dec. ¶¶ 5-7 (no point assessed for September 28 absence because plaintiff had then earned an additional vacation day and wanted to use it). The Eleventh Circuit has "'consistently held that conclusory allegations without specific supporting facts have no probative value.'" Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir. 2000)(citation omitted). Taking plaintiff's testimony that the vacation day he used on September 28, 2003 was not his "last one" as true, this testimony does not – without more – permit an inference that plaintiff had accrued leave remaining when he was assessed an attendance point for his absence on October 10, 2003.

come into the department in which he works and learn to run the machines in the department, while blacks who work in the department, who have requested to learn to run the machines, are not allowed to do so." (Complaint, ¶ 74). Defendants argue that plaintiff cannot establish a *prima facie* case because he cannot show: (1) that the failure to train constituted an adverse employment action; or (2) a similarly situated comparator.

Plaintiff testified that he wanted to learn how to operate the "CNC machine," a new machine in his department which is used to drill holes in aluminum. He requested the training, but was not selected. Employees from other departments – both black and white – were brought in to train on the machine. Plaintiff testified that he "felt like it was discriminatory for allowing other people to come from outside and be trained and not the people in the department." (Hampton depo., pp. 34-43).

Plaintiff has not produced evidence that defendants' failure to train him to operate the CNC machine altered the terms and conditions of his employment or that it adversely affected his status as an employee in any way. See Mack v. ST Mobile Aerospace Engineering, Inc., 195 Fed. Appx. 829, 845-46, 2006 WL 2129661 (11th Cir. Jul. 31, 2006). Thus, he has not shown that this denial of training constituted an adverse employment action and has not established a *prima facie* case of disparate treatment. See Fitzhugh v. Topetzes, 2006 WL 2557921. *7 (N.D. Ga. Sep. 1, 2006)("Other than identifying the fact that she was denied such training, Plaintiff fails to state how, or even if, that denial affected her salary, title position, or job duties. The denial of training, without more, does not constitute an adverse employment action."); Merriweather v. Alabama Department of Public Safety, 17

F. Supp.2d 1260, 1271 (M.D. Ala. 1998)(plaintiff failed to establish a *prima facie* case of disparate treatment arising from non-selection for training courses where she did not show that the training "affected or could affect her salary, chances of promotion, ability to perform her job, or any other aspect of her employment."). Defendants are entitled to summary judgment on plaintiff's training claim.

## Overtime Claim

Plaintiff alleges that "[o]n Saturday, May 3, 2003, a white worker, Michael Frobes [sic], was allowed to take off, and was not made to work overtime, while black workers, such as Plaintiff Hampton, were required to work overtime or receive discipline for failing to do so." (Complaint, ¶ 73). Defendants argue that plaintiff cannot establish a *prima facie* case of disparate treatment because: (1) he cannot show an adverse action; and (2) he cannot show a similarly situated comparator.

Plaintiff's testified that Forbus worked in the welding department but came to plaintiff's department to help out. "Everybody" was told that the department would be working Saturdays, on a rotating basis – "like some people will work this Saturday, some people will work the next Saturday." Plaintiff ended up working every Saturday, but "some guys were off." (Hampton depo., pp. 28-29). On May 3, 2003, some of the employees were working and others were not. (Id., p. 30). Plaintiff does not know whether Forbus was scheduled to work overtime that Saturday, and is not sure whether Forbus worked other overtime Saturdays with plaintiff. (Id., p. 32). He cannot recall any other dates on which Forbus was excused and plaintiff was required to work. (Id., p. 33). Plaintiff testified that

11

he "loved working overtime" and that he was never penalized for not showing up, because he always showed up for the overtime. He cannot recall whether anyone was penalized for not showing up for overtime. (Id., pp. 33-34). His objection to the overtime was that it was mandatory, *i.e.*, that "whether [he] loved it or not, [he] had to be there." (Id., p. 34).

According to plaintiff's own testimony, Forbus was not assigned to the department which had instituted the mandatory Saturday overtime, but worked in the welding department and was "helping out" in plaintiff's department because of a work backlog. (Hampton depo., pp. 28-29). Plaintiff has not demonstrated that he and Forbus were similarly situated for purposes of assignment of overtime work in the aluminum department. Accordingly, defendants are entitled to summary judgment on this claim.

### Retaliation Claim

To establish a *prima facie* case of retaliation under Title VII, plaintiff must show that (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression. Batch v. Jefferson County Child Development Council, 2006 WL 15437776, *2 (11th Cir. Jun. 7, 2006)(unpublished opinion). Race-based retaliation claims are also cognizable under § 1981. Id. (citing Andrews v. Lakeshore Rehabilitation Hospital, 140 F.3d 1405 (11th Cir. 1998)). Plaintiff alleges that he was terminated because he filed a claim of racial discrimination. (Complaint, ¶ 78).

Plaintiff filed a charge of discrimination with the EEOC on May 21, 2003 (Exhibit 3-C). The only attendance points he incurred after the charge occurred on September 19,

2003 (one-half point) and on October 10, 2003 (one point). (Bright dec., ¶ 47; Gibbs dec., ¶¶ 5-7). Gibbs testifies that he terminated plaintiff because the October 10 absence caused him to accrue his tenth point and that, when he assigned the attendance points for plaintiff's absences on September 19 and October 10, he did not know that plaintiff had filed an EEOC charge against Norment. (Gibbs dec., ¶ 8).

Plaintiff cannot establish causation unless he can demonstrate that the decisionmaker was aware of the protected activity. See Brungart v. Bellsouth Telecommunications, Inc., 231 F.3d 791, 799-800 (11th Cir. 2000)("[T]emporal proximity alone is insufficient to create a genuine issue of fact as to causal connection where there is unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct."). Gibbs' denial of knowledge may be impeached by circumstantial evidence. See Lippert v. Community Bank, 438 F.3d 1275, 1281-82 (11th Cir. 2006). However, that circumstantial evidence must be sufficient to permit a reasonable factfinder to conclude that the decisionmaker had actual knowledge of the protected activity. See id. at 1282. The evidence of record is not sufficient to permit a factfinder to conclude that Gibbs was actually aware of plaintiff's EEOC charge. Further, knowledge of the protected activity cannot be imputed to the corporate defendant for purposes of establishing a *prima facie* case of retaliation simply because corporate officials or supervisors other than Gibbs had knowledge of the activity. Brungart, *supra*, 231 F.3d at 800.

Plaintiff has not produced evidence sufficient to demonstrate the existence of a genuine issue of material fact on the issue of causation and, thus, has not established a *prima*

*facie* case of retaliation. Accordingly, defendant is entitled to summary judgment on plaintiff's retaliation claim.

## CONCLUSION

For the foregoing reasons, it is

ORDERED that defendants' motion for summary judgment (Doc. # 61) is GRANTED. Hampton's claims will be dismissed by separate judgment.

Done, this 8th day of January, 2007.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE